# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HARLAN C. PETERSEN,**

          **Plaintiff,**

       **v.**                                                          **Case No. 18-CV-2016**

**ANDREW M. SAUL,**

          **Defendant.**

# DECISION AND ORDER

**1. Procedural History**

Harlan C. Petersen applied for Social Security Disability Insurance and Supplemental Security Income on December 4, 2014 (Tr. 214) alleging that he has been disabled since March 1, 2013 (Tr. 216) due to cramping and pain in his legs and hands, depression, anxiety, and high blood pressure (Tr. 254).

After his claim was denied initially and on reconsideration, a hearing was held before an administrative law judge (ALJ) on September 20, 2017. (Tr. 24-49.) At the hearing, Petersen amended his alleged onset date to May 8, 2015. (Tr. 29.) In a decision dated February 6, 2018, the ALJ found that, despite Petersen's severe impairments of chronic obstructive pulmonary disease (COPD) and hypertension, he had the residual

functional capacity (RFC) to perform medium work, except he must avoid exposure to fumes, odors, dust, gases, humidity, and other pulmonary irritants. (Tr. 98-109.) Petersen's obesity, depression, anxiety, and leg and hand cramps were determined to be not severe. (Tr. 104.) Because he was capable of performing his past relevant work as a truck driver, he was not disabled. After the Appeals Council denied his request for review (Tr. 1-3), Petersen filed this action.

## 2. Standard of Review

The court's role in reviewing the ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). If the ALJ committed a material error of law, however, the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

**3. Analysis**

**3.1. Residual Functional Capacity**

Petersen argues that the ALJ erred in his RFC assessment. He focuses on the ALJ's evaluation of the opinion of Deb Hoffman, a family nurse practitioner. On April 5, 2017, Hoffman completed a Medical Source Statement wherein she opined that Peterson could frequently lift 10 pounds but could only occasionally lift 20 pounds or more. (Tr. 356.) She also stated that Petersen would need a five to ten-minute break every two hours. (Tr. 357.) The ALJ assigned Hoffman's opinion "partial weight." (Tr. 108.) He stated:

> Her exertional limitations are consistent with the claimant's reports of his standing, walking, and lifting abilities, the evidence surrounding his part-time work activity and participation in a variety of activities of daily living. Her opinions are also consistent with medical evidence showing the claimant's COPD is exacerbated by environmental triggers such as weather conditions. However, Ms. Hoffman's limitation for additional unscheduled breaks is unsupported by the evidence of record, which shows the claimant's COPD and hypertension are generally under good control, and claimant's testimony he is able to able to walk for approximately two miles and lift from 25 to 50 pounds.

(Tr. 108 (citations omitted).)

**3.1.1. Lifting**

The ALJ's assessment of Hoffman's opinion appears to contain a contradiction. The ALJ at first seems to credit Hoffman's opinions as to Petersen's exertional limitations, including lifting ability. (Tr. 108.) But then he discounts Hoffman's opinion in part because it is inconsistent with Petersen's own testimony that he could lift from 25-50 pounds. (Tr. 108.) To the extent that the sentence in the ALJ's decision that Hoffman's

3

expressed "exertional limitations are consistent with the claimant's reports of his standing, walking, and lifting abilities, the evidence surrounding his part-time work activity and participation in a variety of activities of daily living" might be read as agreeing with the lifting limitation that Hoffman identified, it is clear from reading the ALJ's decision as a whole that he credited Petersen's own testimony and found he was capable of regularly lifting up to 25 pounds. (*See, e.g.*, Tr. 107 (noting that Petersen's physical activity, including a stated ability to lift 25 pounds regularly, was inconsistent with his allegations of disabling symptoms); 108 (discounting medical opinion that Petersen would be limited to lifting 10 pounds because, in part, Petersen testified he was capable of lifting 25 pounds regularly).

Petersen argues that he never said he could lift up to 25 pounds with the frequency required for work at the medium exertional level. Medium work requires "frequent lifting or carrying of objects weighing up to 25 pounds." SSR 83-10. "'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10. Thus, a person working at the medium exertional level may be lifting 25 pounds for over five hours in an eight-hour workday.

It is true that Petersen never said that he could lift 25 pounds for more than five hours a day. But he was never asked that question. Instead, his attorney asked him, "So, how much weight do you think you could lift on a regular basis?" (Tr. 40.) He responded, "I would say 25." (Tr. 40.) To the extent the phrase "regular basis" is ambiguous, it was

incumbent upon his attorney to clarify it. Faced with Petersen's testimony, the court cannot say that the ALJ erred in equating "regular basis" with "frequently" as defined in SSR 83-10. The fact that treating medical sources opined that Petersen was not capable of frequently lifting 25 pounds did not require the ALJ to reject Petersen's own testimony. The ALJ was entitled to conclude that Petersen was better able to assess his own exertional abilities than his medical providers.

### 3.1.2. Standing

Medium work also requires "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday …." SSR 83-10. On the form Hoffman completed, a question asked "STANDING/WALKING: How many hours total (w/ normal breaks) can your patient stand/walk in an 8-hour workday?" (Tr. 356.) Below were checkboxes for "1 hour," "2 hours," "3 hours," "4 hours," "5 hours," and "6 hours or more." (Tr. 356.) Hoffman did not check any of the boxes. Instead, there is a handwritten notation: "Standing 4-6 hrs" and "Walking 4-6 hrs." (Tr. 356.) In response to a separate question, Hoffman checked a box indicating that Petersen could sit for four to six hours in an eight-hour workday. (Tr. 356.) Petersen argues, "Hoffman's opinion suggests that Mr. Petersen would have to stand for four hours out of the workday when not sitting and similarly sit for four hours out of the workday when not standing." (ECF No. 13 at 10.)

At best, Hoffman's opinion suggests that Petersen *may* need to sit for up to four hours a day (if the ALJ were to accept Hoffman's opinion that Petersen could stand only

5

four hours). But in equal measure it supports the conclusion that Peterson was able to stand for up to six hours per day (and presumably sit only two hours). The ALJ, however, never made an explicit finding as to how long Petersen could stand and walk during a workday.

RFC is a "function-by-function assessment" of the claimant's ability to perform work-related functions, including exertional capacities regarding sitting, standing, walking, lifting, carrying, pushing, and pulling. *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citing SSR 96-8p). Petersen alleges that the ALJ erred because his "RFC assessment here did not explain with particularity how many hours out of the workday Mr. Petersen could sit, stand, and walk." (ECF No. 13 at 12.)

"A function-by-function assessment of an individual's limitations ensures that the ALJ does not overlook an important restriction and thereby incorrectly classify the individual's capacity for work." *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. 2009) However, "the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009). Thus, if it is clear that the ALJ considered the relevant functions, remand is unnecessary. *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003).

There was conflicting evidence as to Petersen's ability to lift and stand. As to Petersen's ability to lift, the court is satisfied that the ALJ implicitly found, based on

6

Petersen's testimony, that he was capable of frequently lifting 25 pounds. The ALJ repeatedly noted Petersen's testimony to this effect when explaining why he was discounting third-party opinions as to Petersen's lifting abilities.

However, there is no such implicit finding as to Petersen's ability to stand and walk. Petersen reported being able stand for up to five hours. (Tr. 36.) Hoffman offered only a range as to Petersen's abilities. It is unclear what Hoffman might have meant in providing this range. Perhaps it reflected uncertainty on her part; or perhaps it reflected a view that Petersen's abilities would vary from one day to the next.

A specific finding as to Petersen's ability to stand and walk was crucial; only if the ALJ accepted the high end of the range provided by Hoffman would Petersen be capable of medium work. In the absence of such a finding, the court cannot be sure that the ALJ did not overlook this function and its relationship to the demands of medium work. Consequently, remand is required. *See Zatz v. Astrue*, 346 F. App'x 107, 111-12 (7th Cir. 2009) (citing *Myers v. Apfel,* 238 F.3d 617, 620-21 (5th Cir. 2001) (remanding where the ALJ failed to provide a specific assessment of the applicant's capacity to stand, walk, push, or pull despite conflicting medical evidence about those functions)).

### 3.2. Unscheduled Breaks

Hoffman opined that Petersen would need unscheduled breaks of five to ten minutes every two hours. (Tr. 357.) The ALJ rejected this limitation, explaining:

7

> Ms. Hoffman's limitation for additional unscheduled breaks is unsupported by the evidence of record, which shows the claimant's COPD and hypertension are generally under good control… (Exs. 6F, 7F).

(Tr. 108.)

Petersen argues that the ALJ erred because "the record contains significant evidence of Mr. Petersen's need to take such breaks." (ECF No. 13 at 14.) Aside from Hoffman's opinion, in support of this assertion Petersen points to the fact that he carries an emergency inhaler that he used 10-15 times over the past summer; walking fast causes him to be short of breath, requiring him to take a break; he needs to engage in tasks in moderation so as to not exacerbate his breathing problems; and extended talking causes him to become winded. (Tr. 13 at 14.) Petersen also alleges that the ALJ erred by not connecting his obesity to his respiratory issues and considering how this may support his need to take breaks. (ECF No. 13 at 15.)

The ALJ provided an adequate explanation for discounting Hoffman's opinion regarding Petersen's need for unscheduled breaks. Petersen does not present evidence of how his obesity demonstrated his need to take unscheduled breaks. As for the other evidence, the ALJ did not err in failing to specifically address it. *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) ("The ALJ need not … provide a 'complete written evaluation of every piece of testimony and evidence.'") (quoting *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)). In essence, Petersen is asking the court to reweigh the evidence and find that the ALJ reached the wrong conclusion. But that the court cannot do. *Overton v. Saul*,

No. 19-1873, 2020 U.S. App. LEXIS 1878, at *10 (7th Cir. Jan. 22, 2020) (unpublished) (citing *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)). The evidence Petersen points to was not inconsistent with the ALJ's conclusions. Substantial evidence supports the ALJ's rejection of Hoffman's opinion regarding Petersen's need for unscheduled breaks.

**3.3. Step Four**

At Step Four of the five-step sequential evaluation process, the ALJ concluded that Petersen was able to perform his past relevant work as a semi-truck driver. (Tr. 109.) Petersen argues that "the ALJ did not properly assess the actual demands of Mr. Petersen's past work." (ECF No. 13 at 16.) Petersen notes evidence that his work as a truck driver required lifting 30-35 pounds, and "that he had to crank a jack on the truck which was harder for him to do in the winter because the grease was colder." (ECF No. 13 at 16.)

But any claim that the ALJ erred by failing to assess Petersen's past relevant work as he actually performed it was harmless because "[a]t step four the administrative law judge need only determine whether plaintiff could have performed his past work as he actually performed it *or* as it is generally performed." *Khang v. Astrue*, No. 11-cv-261-bbc, 2013 U.S. Dist. LEXIS 23240, at *17 (W.D. Wis. Feb. 20, 2013) (emphasis in original) (citing *Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004)). The vocational expert testified that, based on Petersen's RFC, he was capable of performing work as a semi-truck driver both as Petersen performed it and as it is generally performed. (Tr. 44.)

Petersen also argues that the ALJ erred because he

9

> did not make a finding as to the specific environmental requirements of Mr. Petersen's past work. The ALJ did not discuss to what extent that job required Mr. Petersen to be exposed to elements such as dust, gases, odors, fumes, humidity, and other pulmonary irritants, despite finding that Mr. Petersen was to avoid exposure to such irritants in the RFC assessment.

(ECF No. 13 at 17.) Petersen notes that, under the Dictionary of Occupational Titles, a semi-truck driver "must deal with 'exposure to weather' as well as 'other environmental conditions' up to 1/3 of the time." (ECF No. 13 at 17 (quoting DOT No. 904.383-010, 1991 WL 687703).)

The ALJ included Petersen's environmental limitations in the hypothetical he presented to the vocational expert. He proffered, "I want you to further assume that this hypothetical individual must avoid exposure to irritants such as fumes, odors, dusts, and gasses. Also must avoid work environments that are going to lead to exposure to high humidity levels." (Tr. 44.) The vocational expert opined that, despite these limitations, a person could work as a truck driver. (Tr. 44.)

Petersen's argument is really a challenge to the vocational expert's opinion. Unless the vocational expert's opinion conflicts with the DOT, the plaintiff forfeits any challenge to that opinion unless raised at the hearing. *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016). The vocational expert's opinion is not inconsistent with the DOT. To the extent that Petersen is attempting to suggest that exposure to weather or environmental conditions constitutes exposure to high humidity, the DOT states that the job of semi-truck driver does not include exposure to humidity. DOT No. 904.383-010, 1991 WL 687703. Petersen

did not challenge the vocational expert's opinion at the hearing and, consequently, forfeited the opportunity to do so now.

### 3.4. Appeals Council

Because remand is otherwise required, it is unnecessary to address Petersen's argument that the Appeals Council erred in denying his request for review.

## 4. Conclusion

Petersen contradicted Hoffman's opinion when he testified that he could lift 25 pounds on a regular basis. The ALJ was entitled to accept Petersen's testimony over Hoffman's opinion and, therefore, the ALJ provided a good reason for discounting Hoffman's opinion. In addition, the ALJ gave good reasons, based on the record as a whole, for rejecting Hoffman's opinion that Petersen would need unscheduled breaks, and his conclusion was supported by substantial evidence. Although the ALJ appears not to have considered how Petersen actually performed his past relevant work as a semi-truck driver, any error was harmless because the vocational expert concluded that Petersen could perform the duties of a semi-truck driver as the job is generally performed. The vocational expert's conclusion was not inconsistent with the DOT, and therefore any challenge to the vocational expert's conclusions was waived because it was not raised at the hearing.

However, the ALJ failed to engage in a function-by-function analysis of Petersen's abilities. Specifically, the ALJ did not make any finding as to Petersen's ability to stand

and walk during a workday. The omission was material because there was evidence that Petersen may not be able to stand for six hours per day on a regular and ongoing basis, as is required for medium work. Consequently, remand is required for consideration of that issue.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 7th day of February, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge